UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PETER J. NICHOLS,

                Plaintiff,

   -v-                               1:13-CV-00224

BAC HOME LOANS SERVICING LP d/b/a
BANK OF AMERICA NA, and
SELECT PORTFOLIO SERVICING, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

PETER J. NICHOLS
Plaintiff, Pro Se
212 First Street
Scotia, NY 12302

BRYAN, CAVE LLP                   SUZANNE M. BERGER, ESQ.
Attorney for Defendant Bank of America, N.A.    SCOTT H. KAISER, ESQ.
1290 Avenue of the Americas
New York, New York 10104

LOCKE LORD LLP                    JOSEPH N. FROEHLICH, ESQ.
Attorney for Defendant Select Portfolio
   Servicing, Inc.
Three World Financial Center, 20th Floor
New York, New York 10281

DAVID N. HURD
United States District Judge

## MEMORANDUM—DECISION and ORDER

## I. INTRODUCTION

On February 28, 2013, plaintiff Peter J. Nichols ("plaintiff" or "Nichols"), proceeding pro se, commenced this action against BAC Home Loans Servicing LP d/b/a Bank of America NA ("Bank of America"), and Select Portfolio Servicing, Inc. ("SPS") (collectively "defendants").  He alleges that defendants' improper handling of his May 2009 mortgage payments resulted in a series of unwarranted penalties and fees, and that defendants' continued attempts to collect this "disputed" balance violates various consent judgments, the Fair Debt Collection Practices Act ("FDCPA"), and the Real Estate Settlement Procedures Act ("RESPA").  He further alleges fraud, breach of contract, defamation, slander, and libel. Plaintiff requests a court-ordered modification of his mortgage, a declaration that he was never in default, a refund of various payments he made toward resolving this dispute, and $557,100 in damages.

Defendants moved individually to dismiss Nichols' complaint with prejudice pursuant to Federal Rule of Civil Procedure ("Rule ___") 12(b)(6).  Plaintiff opposed, and defendants replied.  The motion was taken on its submissions, without oral argument.

## II. FACTUAL BACKGROUND

The following factual allegations drawn from the complaint, opposition papers, and exhibits[1] are assumed true for purposes of this motion.  On February 15, 2007, Peter J. Nichols and his wife, Kristina L. Nichols, executed an adjustable rate mortgage in favor of

---

[1] Where a pro se plaintiff is faced with a motion to dismiss, it is appropriate to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint.  See Donhauser v. Goord, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotation marks omitted), vacated in part on other grounds 314 F. Supp. 2d 160 (N.D.N.Y. 2004).

Accredited Home Lenders, Inc. on their home located at 212 First Street, Scotia, NY, 12302, in the amount of $132,000.  Compl., Ex. D, ECF No. 1-1, 11-41 ("Mortgage Note").  Countrywide Home Loans ("Countrywide") serviced the mortgage until July 2008, when it was transferred to BAC Home Loans Servicing, Inc. ("BAC").

On September 1, 2008, Nichols defaulted on the mortgage.  Compl. ¶ 2.  He requested and was approved for a loan modification on February 26, 2009.  Compl., Ex. B, ECF No. 1-1, 3-6 ("Modification Agreement").  On March 23, 2009, plaintiff executed an agreement[2] modifying the terms of the mortgage, which added the unpaid mortgage arrears to the principal balance and increased the total balance outstanding from $130,819.71 to $139,257.31.  This agreement also modified plaintiff's monthly payment to $1,199.51 beginning in May 2009, but provided that the monthly payment was subject to change because of his adjustable interest rate and escrow account.  Id.

On May 6, 2009, and May 18, 2009, Nichols made payments of $1,200 and $1,199.51 under the newly modified mortgage.[3]  Compl., Ex. C, ECF No. 1-1, 7-10 ("Account Statement").  On June 17, 2009, plaintiff received a call from a BAC representative named Andrew Jackson, who informed him that his mortgage was in default because he had not made his June payment.  See Compl. ¶ 4.  Despite plaintiff's insistence that he had executed a loan modification, Mr. Jackson apparently "demanded all the default payments[,] late

---

[2]  Nichols includes an unsigned copy of the modification agreement and a number of other mortgage documents in his complaint.  Bank of America has included a properly executed copy of the modification agreement in its moving papers.  See Kaiser Decl., Ex. B, ECF No. 16-4.  Because these documents are integral to plaintiff's complaint, they may also be properly considered without converting this proceeding to a motion for summary judgment.  See Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

[3]  Nichols' payment of $1,200.00 was applied to April 2009, as a "misc. posting," and his payment of $1,199.51 was applied to May 2009, as a "regular payment."

charges, and fees" and "would not accept a partial payment." Id. Plaintiff states that he orally "disputed the default" during this phone call. Id.

Several days later, Nichols received a mortgage statement from BAC indicating that his June payment had not been received and was past due. Compl., Ex. F, ECF No. 1-1, 44. This statement also indicated that his next payment, due July 1, was $1,223.50. Id. Plaintiff never made this June payment, and has not made any payments since May 2009.[4]

In a letter dated July 3, 2009, Nichols received a "Notice of Intent to Accelerate" from BAC, indicating that his account was in default and that $2,423.01 was due by August 7, 2009. Compl., Ex. G, ECF No. 1-1, 45. After multiple phone calls with BAC representatives were unsuccessful in correcting the payment error, plaintiff hired a financial consultant and a letter disputing the debt was sent to BAC by certified mail on August 25, 2009. Compl. ¶ 12. Eventually, plaintiff's financial consultant advised him to hire an attorney, and he retained William Codd, Esq. Compl. ¶ 28. BAC continued to send monthly statements and other notices indicating that plaintiff had not made the required payments on his mortgage. See, e.g., Compl. ¶¶ 30, 32. On June 1, 2011, BAC transferred the loan and servicing responsibilities to Bank of America. Compl. ¶ 1. Thereafter, on October 1, 2012, SPS assumed the loan servicing duties for plaintiff's mortgage.

In an October 9, 2012, "Validation of Debt Notice," SPS informed Nichols that it had assumed responsibility for servicing his mortgage, that the current principal balance was $168,561.66, and that he had thirty days to dispute the debt in writing. Compl., Ex. U, ECF No. 1-3, 11 ("Validation Notice"). In a letter dated October 21, 2012, plaintiff informed SPS

---

[4] The account activity statement attached to the complaint indicates that Nichols has not made any further payments on the mortgage since May 18, 2009, and he does not allege otherwise.

that "as of June 17, 2009 the account has been in dispute without resolve."  Compl. Ex. Y, ECF No. 1-3, 21-27 ("Dispute Letter").  SPS responded to this Dispute Letter and included a number of documents validating the debt and confirming that SPS had assumed responsibility for servicing the mortgage.  Compl., Ex. Z, ECF No. 1-3, 29-55 ("Assignment Notice").

On February 28, 2013, Nichols filed this complaint.  The core allegation of this 230-page filing is that BAC erroneously charged his May 6, 2009, payment to April 2009, leaving the June 2009 balance unpaid.  Plaintiff's subsequent refusal to make any further payments on his mortgage pending the resolution of this alleged billing error has resulted in a host of penalties, fees, and interest, as well as the collection activities associated with such a delinquent debt.  His various claims rest on his apparent assertion that he was entitled to have the May 2009, billing error corrected before he was obligated to make any further payments on his mortgage, and that the penalties, fees, and interest that have accrued are a result of improper practices and malicious intent on behalf of the mortgage lender and its servicers in violation of a number of federal and state laws.

## III.  DISCUSSION

### A.  Motion to Dismiss—Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662,

679 (2009).  Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims.  See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are deemed to be true, and all reasonable inferences must be drawn in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  These basic pleading requirements apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)) (internal quotation marks omitted).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se.  Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, S.J.) (internal quotation marks and footnote omitted).  Even a pro se plaintiff must plead sufficient factual allegations suggesting an entitlement to relief.  Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678 (citations omitted).

### B.  Compliance with Rule 8

As a threshold matter, defendants argue that the entire complaint must be dismissed because it fails to satisfy the pleading requirements of Rule 8(a)(2) and 9(b).  Specifically, Bank of America argues that Nichols' "rambling, forty-seven page [c]omplaint, with twenty-six exhibits" fails to "clearly state any claim" against it.  SPS similarly argues that the "handful of

allegations" made against it are "bare legal conclusions" that fail to state any claims or "allege any wrongdoing" that would support plaintiff's various claims.

As noted above, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2).  Although no technical form is required, "[e]ach allegation must be simple, concise, and direct." Id. 8(d)(1).  The primary purpose of Rule 8's pleading requirements is to provide defendants with "adequate notice." Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004).  Adequate notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." Id. (citations and internal quotation marks omitted).

Defendants correctly state that the complaint is not a simple and concise document, and that it contains legal arguments and conclusions that are improper to include in a complaint.  However, Nichols' forty-seven page complaint and its attached exhibits form an adequate basis for defendants to determine the various claims brought against them.  Indeed, defendants have submitted detailed memoranda of law identifying each of plaintiff's causes of action and providing arguments in support of dismissal.  Because plaintiff has sufficiently identified defendants' allegedly unlawful conduct and the parties have been afforded adequate notice of the claims against them, the complaint accomplishes the primary purpose of Rule 8's requirements.

### C. Leave to Amend

In his opposition papers to SPS' motion to dismiss, Nichols requests leave to amend his pleading as it relates to his fraud claim, or alternatively that it be treated as "plead correctly."  Defendants argue that any amendment would be futile.

Leave to amend should be freely given "when justice so requires."  FED. R. CIV. P.

15(A)(2).  Where a plaintiff is proceeding pro se, a district "court should not dismiss without

granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated."  Thompson v. Carter, 284 F.3d 411, 416 (2d

Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  However, an

opportunity to amend is not required where the defects in a plaintiff's claims are substantive

rather than merely formal, such that any amendment would be futile.  See S.S. v. Whitesboro

Cent. Sch. Dist., No. 11-CV-0036, 2012 WL 280754, at *7 n.7 (N.D.N.Y. Jan. 31, 2012)

(Suddaby, J.) ("As the Second Circuit has explained, "[w]here it appears that granting leave

to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to

amend.").

Nichols cites 18 U.S.C. §§ 1005 and 1031 in his complaint as authority in support of

his claims made under the subheading "USC Chapter 47 - FRAUD," but this chapter of the

United States Code details criminal penalties for defrauding the federal government.  It is a

well-settled tenet of American jurisprudence that "a private citizen lacks a judicially

cognizable interest in the prosecution or nonprosecution of another."  Linda R.S. v. Richard

D., 410 U.S. 614, 619 (1973).  These code sections cannot form the basis for civil liability.

In his opposition papers, Nichols attempts to remedy this defect by making a number

of additional allegations under the subheading "[e]lements to maintain common law fraud."

While these new allegations do nothing to clarify the factual underpinnings of any legally

cognizable claim, plaintiff's original citation to a federal criminal fraud statute can be fairly

construed as an error in form, not substance.  In this circuit, "a pro se plaintiff's papers in

response to a defendant's motion to dismiss for failure to state a claim may be considered as

effectively amending the allegations of his complaint—to the extent those papers are consistent with the allegations in the complaint." Planck v. Schenectady Cnty., No. 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.) (footnote omitted).

Nichols' complaint alleges that SPS delivered fraudulent copies of the original mortgage documents as part of its Assignment Notice. See Compl. ¶ 125. The additional allegations made in plaintiff's opposition papers are an attempt to clarify this argument. For instance, plaintiff claims "all the initials appear in different places" and that the mortgage agreement attached to the Assignment Notice is a "forged mortgage document constituting fraud." See Pl.'s Mem. Opp'n SPS Mot. Dismiss, ECF No. 11, ¶ 4. Because these additional allegations can be read consistently with plaintiff's original allegation of fraud, they will be considered as effectively amending the original complaint.

### D. **Consent Judgments**

Nichols alleges violations of consent judgments reached in four other federal cases between defendants and various government agencies.[5] Defendants argue that plaintiff lacks standing to enforce these judgments.[6]

Generally, "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it" even if they were intended to be benefitted by it. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975), abrogated on other grounds by Merrill Lynch v. Dabit, 547 U.S. 71 (2006). Other federal district courts have considered and

---

[5] Nichols' complaint refers to these cases by their civil case numbers. Further research indicates that plaintiff is referencing federal cases resolved in the District of Columbia, the District of Massachusetts, and the Central District of California.

[6] Plaintiff abandons this claim against SPS in his response papers, but it is unclear whether he has similarly abandoned it with respect to Bank of America.

rejected claims brought by pro se plaintiffs against these defendants on the basis of the same consent judgments that Nichols claims were violated here.  See, e.g., Reynolds v. Bank of America, N.A., No. 12-CV-1420, 2013 WL 1904090, at *10 (N.D. Tex. May 8, 2013) (analyzing the District of Columbia consent judgment between Bank of America and the federal government and finding that "[p]laintiffs do not have standing to enforce a consent decree that banks have entered into with the government"); Wimbley v. Select Portfolio Servicing, Inc., No. 08-CV-939, 2009 WL 2045922, at *3 (M.D.N.C. July 9, 2009) (finding that pro se plaintiffs lacked standing to enforce the District of Massachusetts Modified Stipulated Final Judgment and Order between SPS and the Federal Trade Commission).

These holdings make clear that Nichols lacks standing to enforce the District of Columbia judgment against Bank of America or the District of Massachusetts judgment against SPS.  By this same logic, plaintiff lacks standing to assert a purported violation of the two Central District of California consent judgments entered into between Countrywide, BAC, and the Federal Trade Commission.  Accordingly, his claims under these consent judgments will be dismissed.

### E.  Applicability of the Fair Debt Collection Practices Act

Nichols alleges that defendants' continued attempts to collect the outstanding balance on his mortgage violates numerous provisions of the FDCPA.  Defendants argue that the FDCPA is inapplicable because neither entity is a "debt collector" within the meaning of the Act.

The FDCPA is intended to "eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  Under the statute, a "debt collector" is "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed . . . or due

another." § 1692a(6). Courts in this circuit "have repeatedly stated that a mortgage company that is collecting a debt on its own or is just a creditor is not a debt collector subject to the FDCPA." See Torres v. Baum, No. 10-CV-1385, 2011 WL 2532945, at *7 (N.D.N.Y. June 24, 2011) (Treece, M.J.) (citations omitted). Similarly, entities that have acquired a mortgage debt through a merger with plaintiff's previous creditor or servicer are also exempt because these entities "stand[ ] in the place of [the original servicing company] as [p]laintiffs' loan servicer." Pascal v. JPMorgan Chase Bank, Nat'l Ass'n, No. 09-CV-10082, 2013 WL 878588, at *4 (S.D.N.Y. Mar. 11, 2013) (citations omitted).

Both Countrywide and BAC, Nichols' prior mortgage servicers, merged with Bank of America in the wake of the mortgage industry crisis. See Compl. ¶ 1. Because Bank of America is considered to "stand in the place" of plaintiff's original servicing company and is therefore attempting to collect a debt on its own behalf, it is exempt from the FDCPA. Accordingly, plaintiff's FDCPA claims against Bank of America will be dismissed.

Unlike Bank of America, SPS began servicing Nichols' loan when he was already in default. Id. In the home mortgage context, the FDCPA applies to "servicers who obtain a mortgage that is already in default." Pascal, 2013 WL 878588, at *3 (emphasis omitted). Although SPS correctly argues that plaintiff's various claims rest on his assertion that he is not in default—the consequence of which would relieve SPS from compliance with the FDCPA provisions triggered by his default status—plaintiff's inartful pleading should not defeat his claims for relief. Because SPS began servicing plaintiff's mortgage when it was already in default, the FDCPA applies to its debt collection activities. Accordingly, SPS' motion to dismiss on this basis will be denied.

**F. FDCPA claims against SPS**

**1. False or misleading representations**

Nichols alleges that SPS "falsely represented the character" of his debt in various statements and notices.  Compl. ¶ 108.  The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation" of the "character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(a).  Plaintiff alleges that "3 statements and notices" sent by SPS contained "fraudulent" information relating to his mortgage, but he fails to supply the contents of these allegedly fraudulent statements.  He appears to refer to the October 9, 15, and November 28, 2012, statements, which all contain detailed information about the balance outstanding on the mortgage and include a signed copy of the original mortgage agreement.

In his opposition papers, Nichols alleges that the copy of the mortgage agreement SPS attached to the Assignment Notice validating the debt must be a forgery because his "initials appear in different places" than on his copy of the mortgage agreement.  However, a comparison of the "original" and purportedly fraudulent versions of the mortgage agreement, both produced by plaintiff as exhibits attached to his complaint, shows that the language in each document is identical.  Compare Mortgage Note 35-53, with Assignment Notice 29-55.  Plaintiff does not allege that he did not sign the "original" document creating the mortgage agreement, nor does he claim that he has paid off the outstanding balance on the mortgage reflected in these notices.  He makes no factual allegations to support his claim that the amount owing is fraudulent in some way outside of the argument that his May 2009, mortgage payments were misapplied.  These notices reflect the charges, late fees, interest,

and other penalties associated with plaintiff's failure to make any mortgage payments for fifty-two months. Accordingly, this claim will be dismissed.

### 2. **Threats of legal action**

Nichols alleges that SPS threatened to foreclose on the mortgage without the legal right to do so. Compl. ¶ 112. The FDCPA prohibits a debt collector from threatening to "take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).

The original mortgage agreement authorized the lender to foreclose on the mortgage in the event the Nichols failed to pay, and provided that the lender may use a servicer to enforce its foreclosure rights under the agreement. See Mortgage Note. Plaintiff alleges that he executed the mortgage and that the servicing rights were transferred to SPS on October 1, 2012. Compl. ¶ 1. He does not allege that he has made any payments on the mortgage since May 18, 2009, and points to no factual support for his conclusion that SPS cannot legally foreclose outside of his persistent assertion that he is not in default. Because SPS is the current servicer of plaintiff's mortgage and plaintiff has failed to make any payments for fifty-two months, it indisputably has the legal right to foreclose under the terms of the mortgage agreement. Accordingly, this claim will be dismissed.

### 3. **Unfair practices**

Nichols alleges that SPS attempted to collect a debt it knew or should have known was "false." Compl. ¶ 117. The FDCPA forbids "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The mortgage agreement expressly authorizes the lender or its servicer to collect principal, interest, prepayment, late charges, and any other amounts due under the

mortgage.  See Mortgage Note 5-6; see also Corazzini v. Litton Loan Servicing LLP, No. 09-CV-199, 2010 WL 6787231, at * 7 (N.D.N.Y. June 15, 2010) (D'Agostino, J.) (holding that "[p]laintiff's subjective misunderstanding of the total amount owed does not constitute a false, deceptive, or misleading representation" under 15 U.S.C. § 1692f).  Plaintiff cannot identify any specific "false" charges outside of the alleged misapplication of his May 2009, payments, which were applied years before SPS began its servicing duties.  Rather, the voluminous exhibits attached to the complaint reflect the mounting balance from fifty-two months of penalties, interest, fees, and charges accruing from the unpaid balance.  Accordingly, this claim will be dismissed.

### 4.  Validation of debts

Nichols alleges that SPS did not cease collection activities after he disputed the debt in writing.  Compl. ¶ 120.  This section provides that, if the consumer notifies the debt collector in writing within a thirty-day period of the initial notice of the debt that "the debt, or any portion thereof, is disputed," then the debt collector must cease all collection activities until it mails a copy of the verification of the debt to the consumer.  15 U.S.C. § 1692g(b).

Nichols alleges that he sent a "notification of dispute" dated October 21, 2012, in response to SPS' October 9, 2012, Validation Notice.  See Dispute Letter.  Ultimately, SPS complied with its statutory obligation by mailing an executed copy of the mortgage agreement and associated documents on November 28, 2012, thereby verifying the debt.  See Assignment Notice.

However, attached as exhibits to Nichols' opposition to SPS' motion are two notices sent by SPS after it was informed of his dispute in writing, but before it complied with its obligation to mail him a verification of the debt.  One is a request for "certain documentation"

to determine whether plaintiff is eligible to participate in the U.S. Treasury's Home Affordable Modification Program.  The other, dated November 14, 2012, is titled "monthly mortgage statement" and states that a payment of $53,557.14 is due on December 1, 2012.  <u>See</u> Mem. Opp'n SPS Mot. Dismiss, Ex. CC, ECF No. 11, 14.

In light of this new development[7], SPS claims that Nichols' letter merely "references [plaintiff's] previous dispute with Bank of America" and that this dispute letter is not directed at SPS.  This argument is unpersuasive.  Plaintiff's dispute letter unequivocally states "I am in dispute of all amounts contained in the validation of debt."  <u>See</u> Dispute Letter 21. Because the November 14, 2012, "monthly mortgage statement" could be construed as an attempt to collect a debt during a period that SPS was obligated to cease all collection activities, Nichols has plausibly stated a claim for relief under this section of the FDCPA. Accordingly, SPS' motion to dismiss this claim will be denied.

## G. <u>Fraud</u>

Nichols alleges that defendants fraudulently charged his account with various penalties and fees between June 29, 2009, and September 17, 2012.  Compl. ¶ 121. Defendants argue that plaintiff has not sufficiently alleged common law fraud or met the heightened pleading requirements of Rule 9(b).

Under New York law, a valid fraud claim requires plaintiff to allege that:  "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the

---

[7]  In SPS' moving papers, it correctly points out that although plaintiff "attaches reams of documents to his [c]omplaint, [he] does not attach any of the documents purportedly used by SPS to collect a debt from him in November of 2012."  SPS' Mem. Supp. Mot. Dismiss, ECF No. 7-1, 15.  Nichols remedies this defect by attaching these two documents to his opposition papers.

plaintiff suffered damages as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995).  Allegations of fraud must be pled with particularity.  FED. R. CIV. P. 9(B).  This "particularity" requirement is satisfied when a plaintiff specifies "(1) the details of the time and place of the alleged misrepresentation; (2) the identity of the speaker; and (3) the content of the misrepresentations."  United Republic Ins. Co. v. Chase Manhattan Bank, 168 F. Supp. 2d 8, 16 (N.D.N.Y. 2001).  Importantly, "[c]onclusory allegations and speculation are not sufficient to plead fraud with particularity." Id. at 17.

Nichols makes a series of general allegations regarding the "alteration of records" and "false penalties, fines, fees, interest" and other costs.  Compl. ¶ 121-24.  His only detailed allegation is that the copy of the mortgage agreement provided by SPS in its Assignment Notice is "clearly a face value forged document" because his "initials appear in different places."  This bald assertion fails to satisfy the heightened pleading requirements of Rule 9(b).  Notwithstanding the fact that this is a legal conclusion, a comparison of the "original" and "forged" mortgage documents reveals that the terms and conditions of the two documents are identical.

Even assuming the truth of Nichols' statement for purposes of the motion to dismiss, he has failed to allege any of the other requisite elements of fraud.  He has not identified the specific contents of the various misrepresentations, alleged malicious intent on behalf of either defendant, or demonstrated his reliance on any misrepresentation.  In fact, it would be impossible for plaintiff to show reliance on SPS' allegedly fraudulent documents because he has not made a single payment toward this purportedly incorrect balance.  The same is true for any allegations of fraud against Bank of America, since he has not made any payments

since May 18, 2009.  Plaintiff's conclusory allegation that the document is a forgery and mere speculation that SPS has somehow defrauded him by virtue of producing an unaltered copy of the mortgage agreement is insufficient to state a claim under the heightened pleading requirements of Rule 9(b).  Accordingly, plaintiff's fraud claim will be dismissed.

### H.  Breach of contract

Nichols alleges that Bank of America breached its contractual obligations under the mortgage by:  (1) improperly posting his May 6, 2009, mortgage payment; (2) increasing his monthly mortgage payment; (3) establishing an escrow account to pay taxes and insurance; (4) purchasing insurance on the property; and (5) sending twenty-six statements charging "false amounts" and threatening to take legal action against him.  Compl. ¶¶ 72-81.  Bank of America argues that:  (1) the loan modification agreement specifically allowed for changes to the payment amount; and (2) the establishment of an escrow account was lawful under the agreement.

In support of these claims, Nichols includes bracketed references to six different provisions of the Uniform Commercial Code, without identifying their purpose, how they were allegedly violated, or whether they have been adopted by New York.  Under New York law, a valid breach of contract claim requires that plaintiff allege:  "(1) a contract; (2) performance of the contract by one party; (3) breach of the contract by the other; and (4) damages." Adams v. Smith, No. 07-CV-0452, 2010 WL 3522310, at *15 (N.D.N.Y. Sept. 1, 2010) (Kahn, J.) (granting motion to dismiss breach of contract claim where plaintiff failed to adequately plead "the existence of any terms within a contract that have been breached, nor . . . her own performance").

Nichols' complaint fails meet this threshold pleading requirement.  Although he claims that Bank of America breached the contract, he cannot identify any provisions of the contract that were violated.  The loan modification agreement clearly states that "[t]his payment is subject to change if your escrow account is reanalyzed or if you have a step rate, interest only or adjustable rate loan type."  <u>See</u> Modification Agreement.  The original loan agreement includes an "adjustable rate rider," and states that Bank of America will keep and hold escrow funds in a savings or banking institution for payment of various escrow items, including mortgage insurance on the property.  <u>See</u> Mortgage Note 16.

Further, Nichols has failed to plead his own performance under the contract.  After making two payments in May 2009, the various account statements incorporated by reference in plaintiff's complaint clearly indicate that he has not made a single payment since May 18, 2009, and he does not allege otherwise.  Because plaintiff cannot identify the terms of the agreement that were breached and has not alleged his own performance under the contract, he has failed to state a claim.  Accordingly, plaintiff's breach of contract claim will be dismissed.

## I.  <u>Billing error resolution</u>

Nichols alleges that Bank of America's continued attempts to collect the monthly payment and other arrears following his written dispute letter violated various provisions of 12 C.F.R. § 1026.13.  Bank of America argues that this section is inapplicable to residential mortgages.

Titled "Billing Error Resolution," § 1026.13 is part of the implementing regulations issued by the Bureau of Consumer Financial Protection under the Truth in Lending Act ("TILA").  It describes a process for disputing debts arising out of the issuance of "open-end

credit" under the TILA. An "open-end" credit transaction, for purposes of this section, is one where: "(I) [t]he creditor reasonably contemplates repeated transactions; (ii) [t]he creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) [t]he amount of credit that may be extended to the consumer during the term of the plan . . . is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. § 1026.2(a)(20).

Although these implementing regulations only define a "closed-end" credit transaction by exclusion, other courts have noted that a closed-end credit transaction under the TILA is one where "the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage." McAnaney v. Astoria Financial Corp., No. 04-CV-1101, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008) (quoting Baskin v. G. Fox & Co., 550 F. Supp. 64, 66-67 (D. Conn. 1982).

The initial mortgage executed by Nichols in favor of Accredited Home Lenders, Inc. and serviced by Countrywide did not contemplate repeated transactions nor an increase in the amount of available credit as the principal balance was repaid. See Mortgage Note. Rather, it was a completed transaction with the finance charges divided into the term of the loan and incorporated into a series of time payments to be paid by plaintiff. The subsequent modification was identical, explicitly incorporating the terms of the original mortgage and adding the arrears to the principal balance. See Modification Agreement. Nothing in either instrument contemplated future credit advances or any other indicia of an open-end line of credit. Because the billing error resolution provisions of 12 C.F.R. § 1026.13 do not apply to plaintiff's closed-end mortgage, this claim will be dismissed.

**J. Real Estate Settlement Procedures Act**

Nichols alleges that Bank of America violated RESPA by: (1) reporting his default under the mortgage to various credit reporting agencies; (2) failing to reply to his various requests for information; (3) charging his account a $2,000 fee for a foreclosure attorney; and (4) establishing and maintaining an escrow account for his mortgage. Bank of America argues that: (1) most of plaintiff's claims under 12 U.S.C. §§ 2605 and 2607 are time barred; (2) his timely claims are inadequately pleaded; and (3) 12 U.S.C. § 2609 does not contemplate a private right of action.

RESPA's purpose is to address "certain abusive practices that have developed in relation to the disclosure of information regarding the nature and costs of the [real estate] settlement process . . . . [and] generally requires that lenders disburse escrow funds in an appropriate and timely manner and that they provide regular reporting of such disbursements." Flagg v. Yonkers Sav. & Loan Ass'n, FA, 396 F.3d 178, 184 (2d Cir. 2005) (internal citations and quotation marks omitted).

**1. 12 U.S.C. § 2605**

Nichols alleges that Bank of America did not respond to ten dispute letters and requests for information in a period spanning from June 2008 to September 4, 2012. Compl. ¶ 90-91. Section 2605, which requires that a mortgage loan include notice about whether loan servicing duties may be assigned, sold or transferred, has a three-year statute of limitations for timely filing alleged violations. See Johnson v. Scala, No. 05-CV-5529, 2007 WL 2852758, at *5 (S.D.N.Y. Oct. 1, 2007).

Nichols filed this action on February 28, 2013, rendering any purported violations occurring prior to February 28, 2010, time-barred by the applicable statute of limitations.

See id.  Plaintiff timely alleges violations on July 12, and September 14, 2012.  However, "[a] violation of [d]efendants' statutory duty alone does not state" a RESPA claim.  Gorham-DiMaggio v. Countrywide Home Loans, Inc., No. 08-CV-019, 2009 WL 1748743, at *9 (N.D.N.Y. June 19, 2009) (Treece, M.J.) aff'd, 432 Fed. App'x. 97 (2d Cir. 2011) (finding that "[w]ithout an allegation of actual pecuniary damages and proximate cause, [p]laintiff fails to state a claim upon which relief can be granted").

Even assuming that Bank of America did not respond to Nichols' various letters, he fails to allege what was requested in those letters, how Bank of America's responses were deficient, how he was damaged by each failed response, or whether those inactions were the proximate cause of any injuries he suffered.  In contrast, the filings attached to plaintiff's complaint indicate that Bank of America repeatedly responded to his various requests for information about the mortgage.  Accordingly, plaintiff's § 2605 claims will be dismissed.

### 2.  12 U.S.C. § 2607

Despite making numerous bracketed references to § 2607, Nichols only generally alleges that "BAC and BA did not have legal rights to invoke . . . the rights they did invoked [sic], . . . [creating] a self induced form of kick back, in which BAC and BA unjustly profited from."  Compl. ¶ 93.

Section 2607 prohibits kickbacks and unearned fees associated with mortgage loans.  See Johnson, 2007 WL 2852758, at *5.  Nichols' allegations under this section merely track the language of the statute and do not provide any facts in support of his claim.  Accordingly, plaintiff's § 2607 claims will be dismissed.

### 3. **12 U.S.C. § 2609**

Nichols alleges that Bank of America lacked the legal authority to establish, maintain, and service the escrow account associated with his mortgage. Compl. ¶¶ 95-99. However, § 2609 does not contemplate a private right of action. See Gorham-DiMaggio, 2009 WL 1748743, at *9. Even assuming a private right of action existed under § 2609, the mortgage agreement and subsequent modification authorized the lender to establish, maintain, and service an escrow account on the debtor's behalf. See Mortgage Note; see also Modification Agreement. Accordingly, this claim will be dismissed.

### K. **Defamation, libel, and slander**

Nichols alleges that Bank of America falsely represented to third parties that he had defaulted on his mortgage. Bank of America argues that these claims are time-barred, and alternatively that these claims have not been pleaded sufficiently.

A plaintiff alleging defamation, libel, or slander under New York law must set forth "the particular words complained of . . . in the complaint." N.Y. C.P.L.R. 3016(a); see also Alexander v. Cnty. of Onondaga, 2009 WL 1322311, at *7 (N.D.N.Y. May 12, 2009) ("A plaintiff alleging defamation under New York Law must plead in his complaint the particular words giving rise to his defamation claim."). Additionally, the complaint must set forth "the time, place, [and] manner" of the allegedly defamatory statements "as well as the persons to whom the statement was made." Lore v. City of Syracuse, 583 F. Supp. 2d 345, 383 (N.D.N.Y. 2008). New York law provides a one-year statute of limitations for "libel, slander, [or] false words causing special damages." See id.

At the outset, any allegedly defamatory statements made by Bank of America prior to February 28, 2012 are time-barred by the applicable statute of limitations. To the extent that

plaintiff may claim Bank of America continued to defame him after that date, he has failed to plead a claim under New York law. He does not plead any specific instances of defamation or identify the specific words giving rise to his claim. Rather, plaintiff merely alleges that "representatives would place phone calls to the plaintiff's residence and leave messages of the falsehood." Compl. ¶ 128. Because the complaint does not set forth the time, place, and manner of the specific statements or the specific persons to whom the statements were made, plaintiff has failed to state a claim under New York law. Accordingly, these claims will be dismissed.

### L. Provisional relief

Nichols requests an automatic stay or a notice of pendency until "this matter is judged before this court . . . . [t]o keep SPS from filing foreclosure proceedings." Construed liberally, plaintiff seeks a preliminary injunction pending the outcome of this litigation. SPS argues that he cannot show a likelihood of success on the merits of his various claims.

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986). "The purpose of a preliminary injunction is to prevent irreparable injury and preserve a court's ability to render a meaningful decision on the merits." Fusco Group, Inc. v. Loss Consultants Intern., Inc., 462 F. Supp. 2d 321, 326 (N.D.N.Y. 2006) (Kahn, J.) (citing Tactica Int'l v. Atl. Horizon Int'l, 154 F. Supp. 2d 586, 597 (S.D.N.Y. 2001).

A party seeking a preliminary injunction must demonstrate: "1) a likelihood of irreparable harm if the injunction is not granted; and 2) either a likelihood of success on the merits of its claims, or that there exists sufficiently serious questions going to the merits of the case to make them fair ground for litigation plus a balancing of the hardships that tips

decidedly in the favor of the moving party." Id. (citing SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21, 24 (2d Cir. 2000).

Nichols cannot show a likelihood of success on the merits of his claims. In over five hundred pages of documents, plaintiff has only alleged a plausible claim for relief under a single provision of the FDCPA, which provides for a statutory penalty against the debt collector. See Carbin v. Northern Resolution Group, LLC, No. 12-CV-1108JTC, 2013 WL 4779231, at *2 (W.D.N.Y. Sept. 5, 2013) (noting that a court may award "up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA"). Even assuming plaintiff were to succeed on that claim, it would not provide the extraordinary remedy he seeks—for SPS to be precluded from foreclosing on a mortgage that he has not made any payments on since May 18, 2009. Accordingly, plaintiff's request for provisional relief will be denied.

## IV. CONCLUSION

Nichols has pleaded thirteen causes of action, twelve of which fail to plausibly state a claim for relief. Although leave to amend is typically freely given, it is not warranted where additional factual allegations would not defeat a renewed motion to dismiss. Absent the single actionable FDCPA violation, plaintiff's five hundred pages of filings underscore his inability to produce sufficient factual support for his various claims.

Plaintiff's 15 U.S.C. § 1692g(b) claim will not be dismissed. He has sufficiently pleaded a facial violation of that statute by demonstrating that SPS sent at least one notice that is arguably an attempt to collect a debt during a period where it was obligated to cease all collection activities. However, plaintiff's twelve other causes of action will be dismissed with prejudice.

Therefore, it is

ORDERED that

1.  Defendant Bank of America's motion to dismiss is GRANTED in its entirety;

2.  Defendant SPS' motion to dismiss is DENIED in part and GRANTED in part;

3.  Defendant SPS' motion to dismiss the 15 U.S.C. § 1692g(b) claim is DENIED;

4.  Defendant SPS' motion to dismiss the remaining causes of action is GRANTED; and

5.  Those causes of action are dismissed with prejudice.

Defendant SPS shall file and serve an Answer to the 15 U.S.C. § 1692g(b) claim on or before November 8, 2013.

The Clerk of Court is directed to enter judgment accordingly.[8]

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 18, 2013
      Utica, New York.

---

[8] An amended judgment will be entered at the conclusion of the remainder of the case.